IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LORI THEIS, <br><br> Plaintiff, <br><br> vs. <br><br> DEERE & CO., <br><br> Defendant. | Case No. 1:17-cv-8979 |

**COMPLAINT FOR DISABILITY BENEFITS WRONGFULLY DENIED**
**29 U.S.C. § 1132(a)(1)(B)**

Now comes the Plaintiff, LORI THEIS, by her attorney MICHAEL BARTOLIC of ROBERTS BARTOLIC LLP, and complaining against the Defendant, she states:

### INTRODUCTION

1. This is an ERISA disability benefit case about a human resources representative who has to use a computer most of the work day cannot use a computer due to her cervical radiculopathy, precluding her from typing or using a mouse with her right arm. Though the job requires full-time work, and the Plan's own medical consultant confirmed Plaintiff cannot work full time, and can only perform handling and fingering activities minimally with her right hand minimally, the Plan still denied the claim.

2. Plaintiff brings this action pursuant to Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(1)(B), seeking disability benefits due pursuant to the terms of an employee benefit plan, a declaration of her rights to future benefits, and attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).

1

## THE PARTIES

3. Plaintiff, Lori Theis, ("Plaintiff" or "Theis"), is a former employee of Deere & Company ("Deere"). Deere sponsors an employee welfare benefit plan, as that term is defined in 29 U.S.C. § 1002(1), which provides disability benefits to employees. Incident to her employment with Deere, Theis received coverage under the plan as a "participant" as defined by 29 U.S.C. § 1002(7).

4. Deere sponsors an employee welfare benefit plan, as that term is defined in 29 U.S.C. § 1002(1), titled the John Deere Welfare Plan for Salaried Employees. That plan contains a number of component plans, including a salary continuance component plan that provides salary replacement if an employee is disabled for the first 52 weeks of disability, and a long term disability component, which provides disability pay thereafter. A copy of the plan document is attached as Exhibit 1, with the long-term disability component plan portion beginning at page DEERE 000060. Deere pays benefits due under the long term disability component of the plan to eligible employees from its general assets.

5. In addition to sponsoring the plan and funding benefits thereunder, Deere is the plan administrator and serves as the fiduciary responsible for determining whether a claimant is eligible for benefits or not. Due to Deere's dual role as decision-maker regarding eligibility and payor of benefits, Deere suffers from a structural conflict of interest.

6. Because Deere is the plan administrator, and any "administrative record" consists of all material known to the administrator relevant to the claim, documents and information known to Deere, whether or not Deere includes documents reflecting those facts in a putative record it produces, will be relevant and discoverable.

## JURISDICTION AND VENUE

7. The Court has general subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it arises under ERISA—a law of the United States—and specifically pursuant to 29 U.S.C. §§ 1132(e)(1) and 1132(f), which give the District Court jurisdiction to hear civil actions brought pursuant to 29 U.S.C. § 1132(a)(1)(B).

8. The Northern District of Illinois is a district in which the defendant can be found. Venue is thus proper in the United States District Court for the Northern District of Illinois. 29 U.S.C. § 1132(e)(2).

9. The ERISA statute provides a mechanism for administrative or internal appeals of benefit claim denials at 29 U.S.C. § 1133. Those avenues of appeal have been exhausted.

## STATEMENT OF FACTS

10. Theis is a participant under the plan.

11. Article II Section 1 of the plan states that full-time salaried employees, certain non-bargained hourly employees, and employees working under the Salaried Part-Time Program or Alternative employment Program are eligible employees, should they be disabled. Theis met the eligibility because her position was a full-time salaried position.

12. The Plan's definition of

> For the first twenty-four (24) months of disability under Long Term Disability, an employee is deemed to be totally disabled when on evidence satisfactory to the Company and the Company's Medical Director of the Company's designate, the employee is unable to perform the duties of the assigned job with reasonable accommodations.
>
> After twenty-four (24) months of disability under Long Term Disability, an employee is to be totally disabled when on evidence satisfactory to the Company and the Company's Medical Director or the Company's designate, the employee is unable to perform the duties of any job for which the employee is or may reasonably become qualified based on education, training or experience due to a physical or mental condition caused by illness or injury. A job that would qualify would be expected to pay at least 60% of the

3

employee's straight-time salary payments in the anniversary year preceding the commencement of disability.

13. Theis worked as a Human Resources Generalist full time, a job required frequent use of a computer, including keyboarding and use of a mouse.

14. Theis stopped working as of June 16, 2016 due to significant disc collapse at C6-7 and severe cervical radiculopathy (pain radiating down her right arm to her right hand) causing pain and weakness in her neck, shoulder blade, right arm, and right hand. She also suffered tremors in her right hand, preventing her from fine manipulation required to use a mouse and keyboard. Trying to use the computer only exacerbated these symptoms.

15. In addition, Theis previously had carpal tunnel syndrome release surgery in her right wrist, and was undergoing treatment for lateral epicondylitis affecting her right elbow, each of which further limited her right arm and hand functionality.

16. Theis also suffered from severe rheumatoid arthritis, further limiting her right hand use.

17. Deere approved Theis' claim for Salary Continuance on account of Theis being disabled from performing her job.

18. After trying more conservative treatment—including epidural steroid injections, trigger point injections, and physical therapy—Theis underwent a C5 and C7 discectomies and arthroplasty in August 2016. Despite the surgery, her symptoms persisted.

19. In March 2017, Theis underwent revision of the previous arthroplasty with removal and interbody placement and fusion at C6-7. Following that second surgery, however, Theis's pain remained unchanged.

20. To receive benefits beyond 52 weeks, Theis had to apply for benefits under Deere's long term disability component of the welfare plan. LTD benefits for Theis would begin on June 17, 2017.

21. In considering Theis' claim for long term disability, Deere sought an opinion from a medical consultant though vendor Managing Care Managing Claims pursuant to a standard template of questions, including:

> 1. Does the claimant meet the Plan definition of being disabled and therefore eligible for Long Term disability benefits?
>
> 2. Based on the medical documentation provided, will the employee be able to perform their job or any job with or without reasonable accommodation?
>
> 3. If the response to Question 2 is yes, and accommodations are needed, what accommodations would be required?
>
> 4. Within your area of expertise, is there any other medical condition determined from the medical documentation provided that would render the employee totally disabled and eligible for long term disability benefits under the Plan requirements?

22. When asking these questions of the medical consultants, Deere provided no indication to the medical consultant of the physical requirements of Theis' job. Deere only provided a job description which outlines the objectives of the job, but is silent on the manner in which the job is performed or the equipment that must be used to perform the job. The medical consultant had no idea Theis must use a computer for work and must use her right hand to type and control a mouse.

23. On information and belief, the medical consultant called Theis' treating physicians' offices and requested to speak only to the physicians' assistants, rather than to the physicians themselves.

24. On June 5, 2017, the medical consultant opined Theis would be totally disabled until June 29, 2017 because that date is 3 months after Theis' most recent surgery. The medical consultant never examined or saw Theis, and merely reviewed records Deere sent to him.

25. He also opined beyond June 29, 2017, Theis would not be disabled from her job, while expressly noting he did not even know the physical requirements of the job. The medical consultant explained he did not see any post-surgical neurological deficits, though this was the second surgery that failed to relieve the radiculopathy (a neurological deficit).

26. On June 7, 2017, Kevin R. Curran, on behalf of Deere, denied Theis long term disability claim outright, even denying her the duration of disability benefits its own medical consultant opined she should receive from June 17, 2017 to June 29, 2017.

27. In denying the claim Deere explained:

> The company's Medical Director or designates has reviewed the information available from your medical providers. It is their determination that your documented condition, as supplied by your physician(s), does not satisfy the eligibility requirements for Long Term Disability (LTD) based Article II, Section 2 of the John Deere Long Term Disability Plan which states: "Total Disability – An employee is deemed to be totally disabled when on evidence satisfactory to the Company and the Company's Medical Director or the Director's designate, the employee is unable to perform the duties of the assigned job or any job for which the employee is or may reasonably become qualified based on education, training or experience due to a physical or mental condition caused by illness or injury." As a result, this makes you ineligible for transition to Long Term Disability benefits.

28. The denial letter did not specify what Deere considered to be any of the physical requirements of Theis' job such that she could address it on appeal and provide evidence with her appeal that specifically demonstrated an inability to perform those physical requirements.

29. On June 26, 2017, Theis appealed the June 7, 2017 denial.

30. With her appeal, among other things, Theis included a letter from her treating physician, Dr. Ahmed Okba. Dr. Okba explained Theis symptoms remained unchanged despite

6

two cervical spine surgeries, and the pain, numbness and tingling are most persistent in the middle three fingers of her right hand. Dr. Okba explained Theis cannot type on a keyboard or use a mouse.

31. Deere referred Theis' appeal to a medical consultant though Managing Care Managing Claims.

32. Deere asked the medical consultant the same four questions asked of the previous medical consultant, pursuant to protocol.

33. The medical consultant called Theis' treating physicians' offices and requested to speak to the physicians' assistants. The medical consultant made no attempt to speak to the doctors themselves.

34. As with the previous medical consultant, Deere provided the medical consultant a job description, but gave no indication of the physical requirements of Theis' job, and gave no indication of the amount of computer use the job requires.

35. On July 6, 2017, the medical consultant opined Theis can perform her job with reasonable accommodations, despite not knowing what the physical requirements of the job are. She opined Theis can do the job full-time, eight hours a day, five days a week.

36. The medical consultant addressed Dr. Okba's June 12, 2017 letter, and acknowledged Theis had pain remaining in her right hand with tingling and numbness, and most persistent in the middle three fingers. The medical consultant, however, failed to even acknowledge Dr. Okba's statement that Theis "would not be able to sit and type on a computer keyboard. She has difficulty moving her whole right extremity, specifically the fine movements. She can not use a mouse to control the computer."

37. After the medical consultant only requested to speak to physicians' assistants, Theis' treating physicians alerted her. Theis in turn alerted Deere that Deere's medical consultant would not try to speak to her doctors. Deere then specifically requested the medical consultant speak to the physicians, and asked an addendum question regarding whether those conversations with the physicians altered the prior opinion.

38. The medical consultant then spoke to each of Theis' treating physicians. She wrote an addendum report on July 21, 2017 changing her opinion to stating Theis only had capacity to work 4 hours per day at most, and could only use her right hand at the "occasional" level, which means somewhere between 1% and 33% of a work day, but the consultant did not give a specific time restriction as she did with the total work day capacity.

39. Despite Theis' job being a full-time job, the medical consultant opined Theis was still not disabled from her assigned job with reasonable accommodations. Despite speaking with the treating physicians, the medical consultant said nothing about Theis' ability to use a computer.

40. On July 25, 2017, Jarrod Hamer, writing on behalf of Deere, upheld the decision to deny Theis' claim for long term disability benefits. This letter again applied the wrong definition of disabled, using the definition applicable to claims for benefits after 24 months of LTD benefits have been paid.

41. After Theis received a copy of the medical consultant's opinion, she contacted Deere and inquired whether she could return to work under the conditions Deere's medical consultant gave. Deere responded to Theis stating Theis would need a full release to return to work from her treating physicians to return. In effect, Deere acknowledged its medical

consultant's restrictions (paying full pay for half of the work) were not a reasonable accommodation.

42. Theis has exhausted her required administrative appeals under the Plan and, thus, all conditions precedent to the filing of this action have been performed or have occurred.

43. Theis is completely disabled under the terms of the Plan.

44. The denial of Theis's claim for benefits was contrary to the terms of the Plan.

45. Deere failed to provide Theis with a full and fair review of her claim in violation of 29 U.S.C. § 1133, as well as 29 C.F.R. § 2560.503-1. Among other deficiencies, Deere violated 29 C.F.R. § 2560.503-1(g)(iii) regarding the content of its notice of an adverse benefit determination.

46. Under 29 U.S.C. § 1132(a)(1)(B), a civil action may be brought by a participant or beneficiary to recover benefits due to her under the terms of her plan, to enforce her rights under the terms of the plan, or to clarify her rights to future benefits under the terms of the plan.

47. As a result of Deere's denial of Theis's claim for benefits, subsequently upholding that decision, and the refusal to overturn it, there exists an actual case and controversy by and between the parties hereto entitling Theis to a declaration of rights clarifying the benefits to which she is entitled under the Plan.

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in favor of the Plaintiff and against Defendants, and award Plaintiff all past due disability benefits;

B. That the Court order the Defendant to pay Plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment;

  C. That the Court award Plaintiff her reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g) and the costs of suit; and

  D. That the Plaintiff recovers any and all other relief to which she may be entitled.

Respectfully Submitted,

/s/ Michael Bartolic
Attorney for the Plaintiff

Michael Bartolic
Roberts Bartolic LLP
208 S. LaSalle Street, Suite 1420
Chicago, Illinois 60604
Tel: 312-635-1600
Fax: 312-635-1601